[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-10904

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JAREECE EDWARD BLACKMON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 1:19-cr-00230-ECM-SRW-1

_____

Before JORDAN, BRANCH, and GRANT, Circuit Judges.

PER CURIAM:

Jareece Blackmon challenges his conviction and sentence for various federal drug- and gun-related crimes, including murder. He claims that the evidence presented to the jury was not sufficient, that one of his counts should have been tried separately, and that his 480-month sentence is substantively unreasonable. After careful review of the record, we affirm.

**I.**

On August 15, 2017, a late-night drug deal went awry. Carl Sewell and a few others had traveled to a residence in Enterprise, Alabama to sell a large quantity of marijuana to Jareece Blackmon. Only Sewell went inside the house, where he was shot. He was later pronounced dead at the hospital. The next day, law enforcement arrested Blackmon at a house listed as his residence, where they recovered eighteen pounds of marijuana and three firearms, including the weapon used to shoot Sewell.

A federal grand jury charged Blackmon with seven violations of federal law. Counts 1 and 5 were for conspiracy to distribute marijuana and possession with intent to distribute. *See* 21 U.S.C. §§ 841(a)(1), 846. Counts 2 and 4 were for possessing various firearms as a felon and Count 6 for using or carrying a firearm in furtherance of a drug trafficking crime. *See* 18 U.S.C. §§ 922(g)(1), 924(c)(1)(A). And Count 3 was for using a firearm to

commit murder in furtherance of a drug trafficking crime. *See* 18 U.S.C. § 924(c), (j)(1).

Count 7 also charged Blackmon with possession of a firearm as a felon, but it arose from an incident one month earlier. Before trial, Blackmon moved to sever this count from his upcoming trial. *See* Fed. R. Crim. P. 14. The court denied the motion, deciding that Blackmon had not shown the necessary prejudice to warrant severance. But the court did take care to instruct the jury to consider each crime and its evidence separately, emphasizing that if the jury found Blackmon "guilty or not guilty of one crime, that must not affect your verdict for any other crime."

After a trial, the jury found Blackmon guilty on all seven counts. The court sentenced him to a total of 480 months of imprisonment and three years of supervised release. His sentence included 60 months for each of Counts 1 and 5, 120 months for each of Counts 2, 4, and 7, and 420 months for Count 3. These terms run concurrently. His sentence also included 60 months for Count 6 to be served consecutively, resulting in the 480-month total.

Now on appeal, Blackmon makes three claims. *First*, he claims that the government did not present sufficient evidence to the jury for Counts 1–6, so the court should have granted his earlier motion for acquittal. *Second*, he argues that the court erred when it denied his motion to sever Count 7. *Third*, he submits that his 480-month sentence is unreasonably high.

## II.

We review challenges to the sufficiency of evidence de novo, but we view all "the evidence in the light most favorable to the government" and draw "all reasonable inferences and credibility choices in favor of the jury's verdict." *United States v. Trujillo*, 146 F.3d 838, 845 (11th Cir. 1998). With this lens, we ask whether "*any* rational trier of fact could have found the essential elements of the crime beyond reasonable doubt." *Id.* (quotation omitted).

We review the district court's decision to deny a motion to sever under Rule 14 for abuse of discretion. *United States v. Hersh*, 297 F.3d 1233, 1241 (11th Cir. 2002). That same standard applies to the substantive reasonableness of a sentence. *United States v. Overstreet*, 713 F.3d 627, 636 (11th Cir. 2013).

## III.

The government presented sufficient evidence for the jury to convict Blackmon on Counts 1–6.[1]

We begin with Counts 1 and 5, the drug trafficking counts. Blackmon makes three non-conclusory arguments about the drug trafficking evidence. He claims that no reasonable jury could have believed the testimony of Cedric Moultrie, that the government

---

[1] Blackmon also references Count 7 in this part of his brief, but he never addresses relevant evidence and only requests dismissal of Counts 1–6. So he has forfeited any argument about the sufficiency of the evidence for Count 7. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681–82 (11th Cir. 2014).

presented no evidence that Blackmon knew about the marijuana recovered at his arrest, and that no evidence showed that he intended to distribute. As for Moultrie, Blackmon does not explain why the jury should not have trusted him, and, without anything more, we "are bound by the jury's credibility choices." *United States v. Broughton*, 689 F.3d 1260, 1277 (11th Cir. 2012) (quotation omitted).

Moultrie's testimony provided ample basis for Counts 1 and 5. He testified that he routinely worked with Sewell to deal drugs, and that they sold to Blackmon multiple times, often meeting him in person. The day of Sewell's death, Moultrie says he and Sewell traveled to Enterprise to sell Blackmon between 25 and 30 pounds of marijuana, which their texts and calls confirmed. This history, combined with the other evidence presented—especially the fact that law enforcement found the duffel bag with over eighteen pounds of marijuana when they arrested Blackmon—allowed a reasonable jury to conclude that Blackmon possessed the drugs and intended to distribute them.

Counts 2, 4, and 6 all relate to possession of a firearm. Count 2 refers to Blackmon's possession (as a felon) of a Beretta Model Px4 Storm handgun. This gun was used to kill Sewell and recovered the next day during Blackmon's arrest. Count 4 relates to Blackmon's possession of that same gun and two others on the day of his arrest. And Count 6 charged him with using a firearm in furtherance of a drug trafficking crime.

For all counts, Blackmon claims that he had no actual or constructive possession of the firearms.  To show such possession, the government needed to only show—using direct or circumstantial evidence—that Blackmon "was aware or knew of the firearm's presence" and "had the ability and intent to later exercise dominion and control over that firearm."  *United States v. Perez*, 661 F.3d 568, 576 (11th Cir. 2011).  Moreover, the firearm "need not be on or near the defendant's person in order to amount to knowing possession."  *Id*. (quotation omitted).

Sufficient circumstantial evidence existed for a reasonable jury to conclude that Blackmon possessed the firearms and used the handgun to further a drug crime.  For Counts 2 and 6, the evidence that we will discuss below—that Blackmon used the handgun to kill Sewell—supports these counts, most notably the eyewitness testimony and his DNA recovered from the weapon.  For Count 4, the fact that law enforcement recovered all three firearms when they arrested Blackmon strongly supports that he knew about them and would later control them.  But that was not all—a witness also testified that the rifle and shotgun were recovered from under furniture that Blackmon repeatedly reached under leading up to his arrest.  A reasonable jury could infer that he possessed all three firearms from this and other evidence.

Finally, Count 3 stands as well.  Along with our conclusions about the other counts, a conviction under 18 U.S.C. § 924(j)(1) requires that Blackmon "in the course" of committing the drug

trafficking crime, "cause[d] the death of a person through the use of a firearm" and that this killing be "murder."

The government presented ample evidence that Blackmon shot Sewell. For one, cellular location data showed that he was near the site of the shooting on that night. One of the defense's witnesses said she saw Blackmon off and on at the house the day of Sewell's death. And two eyewitnesses placed Blackmon at the house where Sewell was shot when it happened. One was a man named Willie Coleman, who was at the house when law enforcement arrived. The other was Moultrie, who had travelled with Sewell to sell the marijuana to Blackmon. He told investigators that he saw Blackmon at the house that night. At trial, he recounted that he saw Sewell walk into the house—with the bag of marijuana, but no gun—and that after a few minutes, he heard gunshots. A forensic doctor testified that Sewell's death was caused by his gunshot wounds, ruling it a homicide.

From this evidence, a reasonable jury could infer that Blackmon shot Sewell in furtherance of his drug crimes.[2] The jury heard evidence about the ongoing drug trafficking conspiracy, multiple eyewitness testimony that Blackmon was in the house with Sewell and the marijuana, and DNA evidence linking him to

---

[2] Blackmon does not challenge the mens rea requirement of 18 U.S.C. § 924(j)(1)—that the killing be with "malice aforethought"—so he has forfeited this argument. *See* 18 U.S.C. § 1111(a); *Sapuppo*, 739 F.3d at 681–82. His challenges revolve around the credibility of the witnesses and the possession of the gun used to kill Sewell.

the murder weapon.  Altogether, and in the light most favorable to the verdict, sufficient evidence supported all six counts on appeal.

## IV.

The court did not abuse its discretion in declining to sever Count 7.  Generally, a court undertakes "a two-step analysis to determine whether separate charges were properly tried at the same time," first analyzing initial joinder of counts under Rule 8(a) and then any request to sever under Rule 14(a).  *United States v. Walser*, 3 F.3d 380, 385–87 (11th Cir. 1993); Fed. R. Crim. P. 8(a), 14.  Blackmon has only challenged the court's refusal to sever under Rule 14(a).

Relief under Rule 14 turns on a showing of prejudice.  *See* Fed. R. Crim P. 14(a).  But defendants must show more than "some prejudice" for us to find an abuse of discretion; a defendant must show both "an unfair trial" and "compelling prejudice."  *Walser*, 3 F.3d at 386 (quotation omitted).  This is a "heavy burden" that requires more than "mere conclusory allegations."  *Id.* (quotation omitted).

Blackmon has not met this burden.  In his brief, he only makes one specific allegation of prejudice: that Count 7 tended to "show bad character on the part of Mr. Blackmon."  This allegation, standing alone, is not compelling enough to label the court's decision an abuse of discretion, especially given how it specifically instructed the jury to consider each crime separately. *See Hersh*, 297 F.3d at 1244.

### V.

Finally, Blackmon claims that his 480-month sentence is substantively unreasonable. In evaluating reasonableness, this Court considers the "totality of the circumstances" guided by the statutory factors set out in 18 U.S.C. § 3553(a). *United States v. Pugh*, 515 F.3d 1179, 1190 (11th Cir. 2008) (quotation omitted).

Blackmon's sentence is reasonable. To start, it fell within the U.S. Sentencing Guidelines range of 420 months to life, which supports a finding of reasonableness.[3] *Id.*; 18 U.S.C. § 3553(a)(4). And the sentence was well below the statutory maximum here—life imprisonment—which is another "indicator of a reasonable sentence." *See* 18 U.S.C. § 924(j)(1); *United States v. Taylor*, 997 F.3d 1348, 1355 (11th Cir. 2021). And finally, despite Blackmon's arguments to the contrary, the sentencing transcript reveals that the court appropriately considered the other § 3553(a) factors. The court not only recited several factors verbatim, but also explained the weight it gave to Blackmon's "extensive criminal history involving guns and drugs and violence," the effect of his actions on the victim and his family, the "danger to the community," and more. We see no abuse of discretion.

⋆    ⋆    ⋆

We **AFFIRM**.

---

[3] On appeal, Blackmon does not challenge the Guidelines computation.